UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CATHY A. MONAGHAN,

        Plaintiff,

   v.

EL DORADO COUNTY WATER AGENCY; WILLIAM T. HETLAND; and DOES 1 through 50, inclusive,

        Defendants.

_____/

NO. 2:10-CV-0434 FCD GGH

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendant El Dorado County Water Agency's (the "Agency" or "defendant") motion to dismiss plaintiff Cathy A. Monaghan's ("Monaghan" or "plaintiff") first amended complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Plaintiff opposes the motion. For

the reasons set forth below,[1] defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff Monaghan was employed by defendant Agency from May 23, 2003, when she was hired as an Administrative Services Officer. (FAC, filed June 2, 2010, ¶¶ 3, 22.) Her position was re-classified to Administrative Manager-Clerk in July 2007. (Id. ¶ 22.) Plaintiff's immediate supervisor was defendant William T. Hetland ("Hetland"), the General Manager of the Agency. (Id. ¶¶ 3, 24.)

Starting in April 2006, Hetland began making sexual advances toward plaintiff. (Id. ¶ 25.) She ultimately surrendered to his advances and became involved in a sexual relationship with Hetland that occurred during both working and non-working hours. (Id. ¶¶ 3, 25, 26.) Plaintiff alleges that from the time the sexual relationship began to the time that plaintiff was terminated, Hetland employed tactics including encouragement, manipulation, and intimidation in order to continue the relationship. (Id. ¶ 26.) Plaintiff also alleges that Hetland encouraged plaintiff's use and abuse of alcohol, which he often provided; plaintiff used and abused alcohol during regular working hours at the Agency with Hetland's knowledge and consent. (Id.)

/////
/////

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

2

1  In October 2007, plaintiff decided to end the sexual
2  affair.[2] (Id. ¶ 28.)  Hetland pressured plaintiff to continue
3  the sexual relationship. (Id.)  Plaintiff felt that she would
4  suffer adverse employment consequences if she refused. (Id.)  As
5  a result, she continued the sexual relationship and did not
6  report Hetland's conduct. (Id.)

7  Plaintiff alleges that the stress of the situation caused
8  her use of alcohol to "spiral[] out of control." (Id.)  When
9  plaintiff complained to Hetland about the stress he was causing
10 her, he would yell and belittle her. (Id. ¶ 29.)  Afterwards, he
11 would apologize and instruct her to "coast" on the job since she
12 "had a great staff and had pulled the office into a well-
13 functioning team." (Id.)

14 Subsequently, plaintiff had discussions with the Agency's
15 counsel, Fred Schaefer ("Schaefer"), concerning Hetland's yelling
16 and belittling her. (Id. ¶ 30.)  She also informed Schaefer that
17 Hetland "would share with her the marital and sexual issues he
18 was having with his wife." (Id.)  Plaintiff alleges that because
19 Schaefer supported Hetland's treatment of her without question,
20 she did not inform Schaefer of her sexual relationship with
21 Hetland for fear that raising the issue would result in
22 retaliation. (Id.)

23 Plaintiff further alleges that Schaefer was aware of
24 plaintiff's alcohol abuse. (Id. ¶ 31.)  Specifically, on one
25 occasion, plaintiff left the office after consuming several

---

[2] Prior to this time, plaintiff disclosed to her husband that she was having a sexual relationship with Hetland.  After the disclosure, Hetland, plaintiff, and plaintiff's husband engaged in four sexual encounters. (Id. ¶ 27.)

3

drinks during her lunch hour; she hit the curb. (Id.) After being notified by a staff member, Schaefer followed plaintiff to her home and talked to her inside her residence. (Id.) Plaintiff was not counseled, reprimanded, suspended, or otherwise disciplined by the Agency for this incident. (Id.)

Further, in June 2009, plaintiff was convicted of misdemeanor driving under the influence of alcohol. (Id. ¶ 32.) Hetland expressed concern that the abuse of alcohol and resulting DUI conviction was his fault and drove plaintiff to her DUI classes. (Id.)

Plaintiff alleges that during the first week of August 2009, Hetland pressured her to have another sexual encounter in Lake Tahoe to coincide with Agency meetings scheduled there later in the month. (Id. ¶ 33.) Plaintiff refused. (Id.)

On August 24, 2009, plaintiff was found asleep at her desk after drinking alcohol. (Id. ¶ 34.) Hetland took her home and called plaintiff's husband. (Id.) Hetland conceded that his behavior both caused and enabled plaintiff's alcohol abuse. (Id.)

On August 25, 2009, the Agency required plaintiff to attend an inpatient alcohol rehabilitation program costing $11,000.00 at her own expense. (Id. ¶ 36.) Plaintiff and the Agency entered into a written agreement (the "Agreement") that provided in part, "On the basis of this conduct, Employer has decided to terminate Employee's employment, but will suspend the termination of employment on the following terms." (Id. ¶ 36 n.1.) The Agreement also required that plaintiff enter an alcohol rehabilitation treatment program and notify the Agency within

1  three days of initial assessment, admission, or beginning
2  treatment.  (Id.)  The parties also agreed that "during and
3  following any period of initial or continuing treatment, Employee
4  agrees that she will, as a condition of continued employment by
5  the Employer, comply with the treatment recommendations of her
6  treatment practitioners."  (Id. ¶ 67.)  On August 27, 2009,
7  Hetland signed an addendum letter to the Agreement (the
8  "Addendum").  (Id. ¶ 37-38.)  The Addendum provided, in part, "By
9  your Agreement with the AGENCY you have agreed to follow the
10 course of counseling and treatment recommended . . . . The
11 Program is for 28 days, which is expected to be completed on
12 September 27, 2009.  We would like to meet with you at your
13 convenience on either September 28 or 29, 2009 to receive your
14 evaluation of the Program and its effectiveness to you."  (Id. ¶
15 37.)  Plaintiff completed the program and performed all
16 obligations under the Agreement.  (Id. ¶¶ 36, 40.)

17     On September 29, 2009, plaintiff met with Hetland and was
18 presented with a written "Termination of Employment" effective
19 5:00 p.m. on September 29, 2009.  (Id. ¶ 40.)  The letter was
20 signed by Hetland, on behalf of the Agency.  (Id.)  Hetland and
21 Schaefer advised plaintiff that she was required to sign various
22 documents in connection with her termination, including a
23 Severance and Release Agreement.  (Id.)  However, plaintiff
24 refused to sign this agreement.  (Id.)

25     Plaintiff contends that from October 2007 to the first week
26 of August 2009, Hetland subjected her to sexual harassment.  (Id.
27 ¶ 41.)  Plaintiff further contends that Hetland retaliated
28 against her for resistance or refusal to engage in sexual

5

1  conduct.  (Id.)  Finally, plaintiff contends that the Agency
2  employed Hetland with knowledge of his unfitness for the position
3  and in conscious disregard for plaintiff's rights in the
4  workplace and both authorized and ratified Hetland's wrongful
5  conduct.  (Id. ¶ 43.)

6  Plaintiff filed a timely charge of discrimination against
7  the Agency and Hetland with the Equal Employment Opportunity
8  Commission ("EEOC") and with the California Department of Fair
9  Employment and Housing ("DFEH") and received right to sue notices
10 in November and December 2009.  (Id. ¶¶ 12-13.)  On February 19,
11 2010, plaintiff filed a complaint in this court.  Plaintiff filed
12 a first amended complaint on June 2, 2010.  In her FAC, plaintiff
13 alleges claims against Hetland and the Agency for (1) sex
14 discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et*
15 *seq.*; (2) sexual harassment in violation of California's Fair
16 Employment and Housing Act ("FEHA"), California Gov't Code §
17 12900, *et seq.*; (3) failure to prevent sexual harassment in
18 violation of FEHA; (4) retaliation in violation of Title VII; (5)
19 retaliation in violation of FEHA; (6) breach of contract; and (7)
20 negligence.

## STANDARD

22 Under Federal Rule of Civil Procedure 8(a), a pleading must
23 contain "a short and plain statement of the claim showing that
24 the pleader is entitled to relief."  See Ashcroft v. Iqbal, 129
25 S. Ct. 1937, 1949 (2009).  Under notice pleading in federal
26 court, the complaint must "give the defendant fair notice of what
27 the claim is and the grounds upon which it rests."  Bell Atlantic
28 v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations

1  omitted).  "This simplified notice pleading standard relies on
2  liberal discovery rules and summary judgment motions to define
3  disputed facts and issues and to dispose of unmeritorious
4  claims."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).
5       On a motion to dismiss, the factual allegations of the
6  complaint must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319,
7  322 (1972).  The court is bound to give plaintiff the benefit of
8  every reasonable inference to be drawn from the "well-pleaded"
9  allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>
10 <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not
11 allege "'specific facts' beyond those necessary to state his
12 claim and the grounds showing entitlement to relief."  <u>Twombly</u>,
13 550 U.S. at 570.  "A claim has facial plausibility when the
14 plaintiff pleads factual content that allows the court to draw
15 the reasonable inference that the defendant is liable for the
16 misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949.
17      Nevertheless, the court "need not assume the truth of legal
18 conclusions cast in the form of factual allegations."  <u>United</u>
19 <u>States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th
20 Cir. 1986).  While Rule 8(a) does not require detailed factual
21 allegations, "it demands more than an unadorned, the defendant-
22 unlawfully-harmed-me accusation."  <u>Iqbal</u>, 129 S. Ct. at 1949.  A
23 pleading is insufficient if it offers mere "labels and
24 conclusions" or "a formulaic recitation of the elements of a
25 cause of action."  <u>Twombly</u>, 550 U.S. at 555; <u>Iqbal</u>, 129 S. Ct. at
26 1950 ("Threadbare recitals of the elements of a cause of action,
27 supported by mere conclusory statements, do not suffice.").
28 Moreover, it is inappropriate to assume that the plaintiff "can

prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 570). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

**ANALYSIS**

**1.  Sexual Harassment**

Defendant Agency moves to dismiss plaintiff's claims for sexual harassment under both Title VII and FEHA because it contends that the sexual relationship was consensual.

Both Title VII and FEHA prohibit harassment based on sex. 42 U.S.C. 2000e; Cal. Gov't Code § 12940(j). "[A]lthough the wording of the Fair Employment Housing Act and [T]itle VII of the Federal Civil Rights Act of 1964 . . . differs in some particulars, the antidiscriminatory objectives and the overriding public policy purposes are identical," and therefore, California courts refer to applicable federal decisions where appropriate.

1  Sorosky v. Burroughs Corp., 826 F.2d 794, 803 (9th Cir. 1987)
2  (citing County of Alameda v. Fair Employment & Hous. Comm'n, 153
3  Cal. App. 3d 499, 504 (1984); Miller v. Dep't of Corr., 36 Cal.
4  4th 446, 463 (2005); Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317,
5  354 (2000)).

6      To sufficiently plead a prima facie case for a violation of
7  Title VII and FEHA based on a hostile work environment, plaintiff
8  must allege that the "workplace [was] permeated with
9  discriminatory intimidation . . . that [was] sufficiently severe
10 or pervasive to alter the conditions of [her] employment and
11 create an abusive working environment."  Harris v. Forklift Sys.,
12 Inc., 510 U.S. 17, 21 (1993) (internal quotations and citations
13 omitted); Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d
14 590, 609 (1989).[3]  Sexual harassment includes "unwelcome sexual
15 advances, requests for sexual favors, and other verbal or
16 physical conduct of a sexual nature that has the 'purpose or
17 effect of unreasonably interfering with an individual's work
18 performance or creating an intimidating, hostile, or offensive
19 working environment.'"  Miller, 36 Cal. 4th at 463 (quoting 29
20 C.F.R. § 1604.11(a)(3)).  Moreover, "the fact that sex-related
21 conduct was 'voluntary,' in the sense that the complainant was
22 not forced to participate against her will, is not a defense to a
23 sexual harassment suit."  Meritor Sav. Bank, FSB v. Vinson, 477
24 U.S. 57, 68 (1986).  Rather, "[t]he gravamen of any sexual

---

26  [3]   The court notes that when pleading employment
    discrimination, a plaintiff need not allege a prima facie case
27  with particularity so long as the allegations give defendants
    notice of and the basis for the charges against them.
28  Swierkiewicz v. Soreman, 534 U.S. 506, 508, 512 (2002).

9

harassment claim is that the alleged sexual advances were 'unwelcome.'" Id. (citations omitted). The determination of whether conduct was unwelcome "presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact." Id.

Supervisors with the authority to control the environment may be held personally liable for harassment in violation of FEHA if they tacitly approved of the actions or if they were aware of the harassment and failed to take action to prevent it. Matthews v. Superior Court, 34 Cal. App. 4th 598, 604 (1995).

> Unlike discrimination in hiring, the ultimate responsibility for which rests with the employer, sexual or other harassment perpetrated by a supervisor with the power to hire, fire and control the victimized employee's working conditions is a particularly personal form of the type of discrimination which the Legislature sought to proscribe when it enacted the FEHA. Our holding that the responsibility for such acts must be borne both by the offender as well as the employer who tolerates the offense is consistent with the Legislature's intent to provide effective remedies which will eliminate such discriminatory practices.

Id. at 605-06 (quotations omitted). Accordingly, where the harassment is committed by a supervisor, the employer is strictly liable. State Dep't of Health Servs. v. Superior Court, 31 Cal. 4th 1026, 1041 (2003).

In this case, plaintiff alleges that she "surrendered" to Hetland's advances and engaged in a sexual relationship with him. Plaintiff alleges that from the time her affair with Hetland began, he used manipulation and intimidation to persuade her to continue the relationship, including encouraging her use and abuse of alcohol. In October 2007, plaintiff wished to end the affair, but continued the relationship because Hetland pressured

her and she believed that she would suffer adverse employment consequences. As such, plaintiff has pled sufficient facts for the court to plausibly infer that the conduct was unwelcome.

Therefore, at this stage of the litigation, where plaintiff's allegations must be taken as true and reasonable inferences drawn therefrom, plaintiff has stated a plausible claim against the Agency for sexual harassment under both Title VII and FEHA. Thus, defendant's motion to dismiss these claims is DENIED.

**2.    Failure to Prevent Sexual Harassment**

Defendant moves to dismiss plaintiff's claim against the Agency for failure to prevent harassment in violation of FEHA on the basis that plaintiff failed to complain of the harassment until after she was terminated.[4]

It is an unlawful employment practice under FEHA "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring" in the workplace. Cal. Gov't Code § 12940(k). When a plaintiff seeks to recover damages based on a claim of failure to prevent harassment, she must show three essential elements: (1) plaintiff was subjected to discrimination, harassment or retaliation; (2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm. Lelaind

---

[4] The Agency also contends that this claim fails for the same reasons it argues that plaintiff's harassment claims fail. However, for the reasons set forth above, plaintiff has alleged sufficient facts to state a harassment claim. Accordingly, this argument is without merit.

11

v. City and County of San Francisco, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008) (citing California Civil Jury Instructions (BAJI) 12.11).

In this case, plaintiff has alleged that she was the victim of unwelcome sexual harassment perpetrated by her supervisor. Plaintiff further alleges that when she attempted to report Hetland's belittling and yelling behavior to Agency's counsel, counsel supported the conduct without question. As such, plaintiff alleges that she did not report the allegedly unwelcome sexual relationship because she feared that it would result in retaliation by her supervisor and, possibly, Agency's counsel. Moreover, plaintiff alleges that the Agency hired Hetland knowing that he had a sexual relationship with a subordinate secretary at his prior employment. Accordingly, plaintiff has pled sufficient facts to support her claim that defendant did not take reasonable steps necessary to prevent unlawful conduct.

Therefore, at this stage of the litigation, plaintiff has stated a plausible claim against the Agency for failure to prevent sexual harassment in violation of FEHA. As such, defendant's motion to dismiss this claim is DENIED.

**3.   Retaliation**

The Agency also moves to dismiss plaintiff's claims for retaliation under Title VII and FEHA, arguing that (1) plaintiff did not engage in protected activity, and (2) she cannot demonstrate a causal connection between any protected activity and her termination because no Agency official was aware of the relationship between plaintiff and Hetland.

/////

12

1    To state a prima facie retaliation claim under Title VII, a
2 plaintiff must demonstrate "that (1) she engaged in a protected
3 activity, (2) she suffered an adverse employment action, and (3)
4 there was a causal link between her activity and the employment
5 decision." <u>Raad v. Fairbanks North Star Borough School Dist.</u>,
6 323 F.3d 1185, 1197 (9th Cir. 2003).  Conduct constituting a
7 "protected activity" includes filing a charge or complaint,
8 testifying about an employer's alleged unlawful practices, and
9 "engaging in other activity intended to oppose an employer's
10 discriminatory practices."  <u>Id.</u> (citing 42 U.S.C. § 2000e-
11 3(a))(internal quotations omitted).  The elements of a cause of
12 action for retaliation under FEHA are identical.  <u>Tarin v. County
13 of Los Angeles</u>, 123 F.3d 1259, 1264 n.4 (9th Cir. 1997)
14 <u>superceded by statute on other grounds as recognized in</u> <u>Leisek v.
15 Brightwood Corp.</u>, 278 F.3d 895, 899 n.2 (9th Cir. 2002); <u>see also
16 Flait v. North American Watch Corp.</u>, 3 Cal. App. 4th 467, 476
17 (1992).

18    Causation "may be inferred from circumstantial evidence,
19 such as the employer's knowledge that the plaintiff engaged in
20 protected activities and the proximity in time between the
21 protected action and the allegedly retaliatory employment
22 decision."  <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1376 (9th Cir.
23 1987); <u>Ray v. Henderson</u>, 217 F.3d 1234, 1244 (9th Cir. 2000)
24 ("That an employer's actions were caused by an employee's
25 engagement in protected activities may be inferred from proximity
26 in time between the protected action and the allegedly
27 retaliatory employment decision.") (internal quotations omitted).
28 An employer's awareness of the protected activity is required to

supply evidence of a causal link between the protected activity and the adverse action. See Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

In this case, plaintiff asserts that by rebuffing Hetland's overtures to engage in a sexual encounter at Lake Tahoe in August 2009, plaintiff opposed Hetland's conduct of discrimination prohibited under Title VII. Plaintiff alleges that while both Hetland and Schaefer were previously aware of plaintiff's problems with alcohol, they took action against her only after she refused to engage in sexual relations with Hetland and in the same month that she declined Hetland's advances. Specifically, in August 2009, plaintiff was required to participate in an inpatient alcohol rehabilitation program at her own expense as a condition of "suspended termination." The following month, having complied with all required conditions and without having returned to work, she was terminated by Hetland, the supervisor she contends was engaging in the sexual harassment. As such, plaintiff has pled sufficient facts that the agency official responsible for her termination was aware of her refusal to engage in sexual activity.

Therefore, viewing these allegations in the light most favorable to the plaintiff and drawing all reasonable inferences therefrom, plaintiff has sufficiently alleged that she engaged in protected activity and that she was retaliated against by the Agency for such conduct in violation of Title VII and FEHA. Accordingly, defendant's motion to dismiss these claims is DENIED.

/////

**4.  Breach of Contract**

Defendant also moves to dismiss plaintiff's breach of contract claim on the grounds that (1) she was an at-will employee; and (2) even if she was not an at-will employee, there was cause for termination.

California Labor Code § 2922 provides that "employment having no specified term, may be terminated at the will of either party on notice to the other."  While § 2922 controls where an employer and employee do not reach an alternative agreement, it does not prevent the parties from settling on different terms, such as "an agreement that the employee will be terminated only for 'good cause' in the sense of a fair and honest cause or reason, regulated by good faith, as opposed to one that is trivial, capricious, unrelated to business needs or goals, or pretextual."  Guz, 24 Cal. 4th at 336 (internal quotations and citations omitted).  The "parties may define for themselves what cause or causes will permit an employee's termination and may specify the procedures under which termination shall occur."  Id.

"Contract interpretation begins with the language of the written agreement."  Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (citing Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993)).  Contract terms are to be given their ordinary meaning, and when the terms of the contract are clear, the intent of the parties must be ascertained from the contract itself.  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1549 (9th Cir. 1990).  However, a court may consider extrinsic evidence to construe an ambiguous written contract.  Winet v. Price, 4 Cal. App. 4th

15

1159, 1165 (1992).  "'A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation.'"  Tanadgusix Corp. v. Huber, 404 F.3d 1201, 1205 (9th Cir. 2005) (quoting Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1032 (9th Cir. 1989).

Plaintiff alleges that the Agreement constituted a contract pursuant to which she ceased to be an at-will employee and the Agency agreed "to suspend termination" of her employment.  The Agreement provides, in relevant part,[5] "Employer has decided to terminate Employee's employment, but will suspend the termination of employment on the following terms," specifying the requirement of alcohol rehabilitation treatment.  Plaintiff argues that the phrase "suspend the termination" manifested an agreement between the parties that plaintiff's termination would be rescinded and that any cause the Agency might have had for terminating her employment would be cured if she satisfied the specified conditions.  While defendant contends that it merely agreed to hold plaintiff's termination in abeyance for a period of time while she completed rehabilitation treatment, the language of the Agreement is not inconsistent with the alternative interpretation proffered by plaintiff.  As such, at this stage of the litigation with the limited information before it, the court cannot conclude that the terms are clear on the

---

[5]  The court notes that plaintiff has not attached or quoted verbatim the complete text of the Agreement.  As such, the court emphasizes that it makes no final determination as to the validity or construction of the Agreement.  Rather, as set forth *infra*, the court merely concludes that under Rule 8(a)'s liberal notice pleading standards, plaintiff has alleged a breach of contract sufficient to survive a motion to dismiss.

16

face of the Agreement.  Further, plaintiff alleges that the Agreement and Addendum required her to complete costly rehabilitation at her own expense, to provide the Agency with written documentation of her treatment, and to meet with the Agency following completion of the program.  She argues that by undertaking these conditions and incurring substantial costs, she fulfilled the conditions precedent to defendant's agreement not to terminate her.

On a motion to dismiss, where the court must view the allegations in the complaint in the light most favorable to the plaintiff, the court concludes that plaintiff has sufficiently stated a plausible claim for breach of contract.  Accordingly, defendant's motion to dismiss this claim is DENIED.

**5. Negligence**

Finally, the Agency moves to dismiss plaintiff's negligence claim on the basis that (1) common law actions against public entities for wrongful termination or retaliation are barred by California Government Code § 815(a) and (2) any sexual harassment was not within Hetland's scope of employment.

**A. Statutory Basis for Public Entity Liability**

Under California Government Code § 815(a), "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," except as otherwise provided by statute.  However, § 815.2(a) provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given

17

rise to a cause of action against that employee or his personal representative." The statute thus "expressly makes the doctrine of respondeat superior applicable to public employers." Hoff v. Vacaville Unified School Dist., 19 Cal. 4th 925, 932 (1998). Consequently, plaintiff may bring her claim under § 815.2(a) if she can establish that Hetland's conduct was within the scope of his employment and if she can otherwise establish that Hetland would be liable to her.

**B.    Scope of Employment**

Under California law, "an employer is liable for risks arising out of the employment." Perez v. Van Groningen & Sons, Inc., 41 Cal. 3d 962, 968 (1986) (internal quotations and citations omitted). "A risk arises out of the employment when in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." Id. (quotations and citations omitted).

However, an employer "will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes." Farmers Ins. Group v. County of Santa Clara, 11 Cal. 4th 992, 1005 (1995) (emphasis in original). "If an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior." Alma W. v. Oakland Unified School Dist., 123 Cal. App. 3d 133, 140 (1981).

1    "The question whether an employee's acts are within the
2 scope of employment is ordinarily a question of fact, but the
3 issue may be determined as a question of law when the material
4 facts are undisputed and no conflicting inferences are possible."
5 Jacobus v. Krambo Corp., 78 Cal. App. 4th 1096, 1103 (2000).  In
6 the context of alleged sexual misconduct by employees against
7 third parties, courts have rejected vicarious liability "as a
8 matter of law because it could not be demonstrated that the
9 various acts of sexual misconduct arose from the conduct of the
10 respective enterprises."  Farmers Ins., 11 Cal. 4th at 1006-07
11 (citing cases).  In addition, the California Supreme Court has
12 held as a matter of law that alleged sexual harassment by a
13 deputy sheriff directed toward other deputies working in a county
14 jail was outside the scope of the deputy's employment.  Id. at
15 1019-20.  The court reasoned that the deputy's conduct, including
16 requests for sexual favors, was "motivated for strictly personal
17 reasons" unrelated to the performance of his employment duties.
18 Id. at 1007.  The court concluded that "an employer will not be
19 held vicariously liable where, as here, it clearly appears that
20 neither directly nor indirectly could the employee have been
21 serving his employer."  Id. at 1008 (internal citations and
22 quotations omitted).

23    In this case, plaintiff's allegations of sexual harassment
24 encompass conduct that substantially deviated from Hetland's
25 employment duties.  Plaintiff alleges no facts that could
26 plausibly suggest that Hetland was serving the Agency when he
27 engaged in the conduct at issue.  Plaintiff thus fails to plead
28 sufficient facts to allege that Hetland was acting within the

19

scope of his employment when he sexually harassed her.[6]  However, plaintiff is granted leave to amend to the extent that she can allege facts to support a plausible inference that Hetland was acting within the scope of his employment.

Accordingly, the Agency's motion to dismiss plaintiff's seventh claim for relief for negligence is GRANTED with leave to amend.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED: July 30, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Furthermore, plaintiff fails to specify the conduct that allegedly constituted negligence.  Indeed, plaintiff's negligence claim appears inconsistent with the allegations in her FAC, which describe intentional conduct on Hetland's part.  "Willfulness and negligence are contradictory terms." Am. Employer's Ins. Co. v. Smith, 105 Cal. App. 3d 94, 99 (1980). "If conduct is negligent, it is not willful; if it is willful, it is not negligent." Id.  Thus, plaintiff also fails to allege negligence with sufficient clarity to put defendant on notice of the basis of her claim.