1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   CATHY A. MONAGHAN,                No. 2:10-cv-00434-MCE-GGH

12            Plaintiff,

13       v.                            MEMORANDUM AND ORDER

14   EL DORADO COUNTY WATER AGENCY;
     WILLIAM T. HETLAND; and DOES 1
15   through 50, inclusive,

16            Defendants.

17                        ----oo0oo----

18

19       Plaintiff Cathy A. Monaghan ("Monaghan" or "Plaintiff")

20   seeks redress for several federal and state law claims alleging

21   that the El Dorado County Water Agency ("Agency") and individual

22   Defendant William T. Hetland ("Hetland" or "Defendant") are

23   liable for sexual harassment in violation of Title VII and the

24   California Fair Employing and Housing Act ("FEHA").  Currently

25   before the court is individual Defendant Hetland's motion for

26   summary judgment or, in the alternative, summary adjudication.

27   ///

28   ///

1

1   Plaintiff opposes the motion.  For the reasons set forth below,

2   Defendant's motion is GRANTED in part and DENIED in part.[1]

3

4                              **BACKGROUND**[2]

5

6       On October 5, 2011, the court issued a memorandum and order

7   granting in part and denying in part the Agency's motion for

8   summary judgment (ECF No. 28).  The facts relevant to the

9   agency's motion are identical to the facts relevant to this

10  motion.[3]  The court recounted the relevant facts as follows:

11          Plaintiff Monaghan began working for [D]efendant Agency
            in May 2003, when she was hired as a full-time
12          administrative assistant. ... [P]laintiff's immediate
            supervisor was [D]efendant, William T. Hetland
13          ("Hetland"), the General Manager of the Agency.

14  ///

15  ///

16  _____

17      [1] Because oral argument will not be of material assistance,
    the Court orders this matter submitted on the briefs.  E.D. Cal.
18  Local Rule 78-230(h).

19      [2] The facts are, for the most part, undisputed.  Where the
    facts are disputed, the court recounts Plaintiff's version of the
20  facts as it must on a motion for summary judgment.

21      [3] In recounting the facts relevant to the Agency's motion
    for summary judgment, the court, predominantly, cited to
22  Plaintiff's deposition testimony attached as exhibits to the
    party's respective declarations.  (See Mem. & Order, filed
23  Oct. 5, 2011, [ECF No.28] at 2 n.2 [citing Decl. of Franklin
    Gumpert ["Gumpert Decl."], filed Aug 16, 2011, [ECF No. #19,
24  Exs A, B & C]; (Decl. Of Manolo Olaso, filed Sept. 1, 2011, [ECF
    No. # 21, Exs. 1 & 2].)  Moreover, at times, and where the facts
25  were not in dispute, the court cited to Defendant's statement of
    undisputed facts.  (See Id. [citing See Def.'s Separate Stmt. of
26  Undisp. Material Fact ["UMF"], filed Aug. 16, 2011, [ECF
    No. #19].)  Finally — and sparingly — the court cited to
27  Plaintiff's response thereto.  (See Id. [citing Pl.'s Response to
    Def.'s Separate Stmt. of Undisp. Facts ["PRUF"], filed Sept. 2,
28  2011, [ECF No. #21].)

After approximately one year of flirtation between [P]laintiff and Hetland, [P]laintiff, a trained massage therapist, gave Hetland a massage, at the end of which she kissed him on the forehead.  Plaintiff later gave Hetland another massage, which ended in the two engaging in a consensual sexual interlude.  Although both parties were married, Hetland and [P]laintiff proceeded to carry on a consensual sexual relationship.  According to [P]laintiff's deposition testimony, during this time Hetland "[a]bsolutely [did] not" condition her employment on having sex with him, nor did he threaten her in any other way if she refused to have sex with him.  Indeed, according to [P]laintiff, the affair was completely mutual.

Eventually, [P]laintiff decided to tell her husband about the affair.  Afterward, [P]laintiff approached both her husband and Hetland with the proposition that the three of them engage in "three-way" sexual relations.  Plaintiff, her husband, and Hetland, voluntarily engaged in a number of "three-way" sexual encounters.  In October of 2007, [P]laintiff's husband asked her to end her relationship with Hetland.  Although [P]laintiff did not want the relationship to end, she complied with her husband's wishes to end the affair.  When [P]laintiff approached Hetland to end the relationship, he told [P]laintiff that "he understood, and he was going to say this once and only once, that he loved [her]."

For a number of months after the affair ended, [P]laintiff and Hetland did not engage in any sexual activity.  During this time, [P]laintiff and Hetland continued to send each other humorous emails with sexual undertones; according to [P]laintiff, this conduct was appropriate because they "were still friends, [they] weren't in an argumentative, combative relationship."  Plaintiff testified that, after a couple of months, Hetland began complaining to [P]laintiff about a lack of intimacy with his wife, and told [P]laintiff that he missed their intimacy.  According to [P]laintiff, this made her feel guilty, and eventually, [P]laintiff and Hetland resumed a flirtatious relationship.  Plaintiff testified that during this time, she "started drinking more, because [of] the anxiety that [she] was getting [from] trying to please [her] boss or a commitment or an obligation to him because he was unhappy."

///

///

///

3

On a weekend in 2008, [P]laintiff and Hetland resumed a consensual sexual relationship at a Rancho Cordova hotel.  According to [P]laintiff, she resumed the affair because she felt that she "had some obligation to Bill Hetland to fill in for the loss of intimacy he had with his wife."  Plaintiff testified that Bill never indicated that her job would be in jeopardy if she did not continue to have sex with him; instead, according to [P]laintiff, she "felt that if emotionally [she] wasn't there for him that he could do away with [her]."  Overall, Monaghan and Hetland had at least 12 more sexual encounters.

As stated above, during the course of the second affair, Monaghan began drinking heavily.  In October of 2008, [P]laintiff voluntarily checked into an alcohol treatment program at Kaiser; however, in December of 2008, she began drinking again.  Plaintiff admitted that, on several occasions, she was under the influence of alcohol at work.  On one occasion, [P]laintiff "had some drinks at lunch" and "hit a curb going out of the parking lot."  On June 8, 2009, [P]laintiff was arrested for driving under the influence of alcohol.  Monaghan had to attend life skills courses as a provision of her punishment; she was permitted to leave work to attend those courses.  On August 24, 2009, [P]laintiff passed out at her desk after consuming too much alcohol.  The situation culminated in August, 2009, when [P]laintiff was consuming alcohol from 7:00 a.m. until she fell asleep at night.

Plaintiff claims that she felt Hetland "was providing her alcohol and/or encouraging her to drink to keep her from reporting harassment."  However, [P]laintiff, in her deposition, stated that Hetland never forced her drink alcohol.  Plaintiff stated that Hetland was not having her drink so that he was sober and she was not; instead, when they did drink alcohol together, she "could have three glasses to his one," because of her alcoholic condition.

Plaintiff alleges that, in August of 2009, Hetland pressured her "to have a sexual encounter with him at Lake Tahoe."  According to [P]laintiff's deposition, Hetland wanted to "get together" with [P]laintiff after a work meeting in Lake Tahoe.  When [P]laintiff conveyed to Hetland that she preferred not to engage, "[h]e just sighed."

///

///

///

4

1    In late August 2009, [P]laintiff and the Agency entered
     into a written agreement (the "Agreement") that
2    provided in part, "On the basis of this conduct,
     Employer has decided to terminate Employee's
3    employment, but will suspend the termination of
     employment on the following terms." Those terms
4    required that [P]laintiff enter an alcohol
     rehabilitation treatment program and notify the Agency
5    within three days of initial assessment, admission, or
     beginning treatment. The parties also agreed that,
6    "during and following any period of initial or
     continuing treatment, Employee agrees that she will, as
7    a condition of continued employment by the Employer,
     comply with the treatment recommendations of her
8    treatment practitioners."

9    In a later agreement, dated August 27, 2009,
     [P]laintiff agreed to participate in a 28-day
10   residential rehabilitation program offered by Duffy's
     Napa Valley from August 29, 2011, to September 27,
11   2009. The agreement stated that the Agency would like
     to meet with [P]laintiff on either September 28, 2009,
12   or September 29, 2009, to receive her evaluation of the
     program. ... There is no dispute that [P]laintiff
13   finished the alcohol rehabilitation program in
     accordance with the Agreement.
14
     Pursuant to the second agreement, Monaghan met with the
15   Agency and Hetland, at which time Hetland presented
     [P]laintiff with a termination letter, signed by
16   Hetland, on behalf of the agency. The letter stated
     the [P]laintiff's "'at-will' employment with the
17   El Dorado County Water Agency is being terminated
     effective 5:00 p.m. on September 29, 2009." Plaintiff
18   also signed an acknowledgment of notice that her
     "'at-will' employment status ... has changed by reason
19   of Involuntary Discharge."

20   Monaghan never told Hetland that he was sexually
     harassing her. Before she was terminated from the
21   Agency, she never told anyone at the Agency about her
     affair and nobody knew of her relationship with
22   Hetland. Moreover, [P]laintiff never told any member
     of the Agency board that she had an affair with
23   Hetland. Monaghan did, however, have a discussion with
     the Agency's general counsel, Fred Schaefer, in which
24   she reported that Hetland yelled at her and was
     erratic; however, she never reported to any person at
25   the agency that she was being *sexually* harassed.

26   (Mem. & Order, [ECF No. 28] at 2:4-8:1) (internal quotations

27   and footnotes omitted).

28   ///

                              5

On February 19, 2010, Plaintiff filed a complaint in this court.  Plaintiff filed a first amended complaint on June 2, 2010.  In her first amended complaint, Plaintiff asserts claims against Hetland for: (1) sexual harassment in violation of California's Fair Employment and Housing Act ("FEHA"), California Gov't Code §§ 12900, *et seq.*; (2) retaliation[4] in violation of FEHA; (3) California common law negligence.

## STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

///

///

_____

[4] Plaintiff concedes that she "does not oppose Defendant HETLAND's motion in connection with her retaliation claim against Hetland because of the holding in Jones v. The Lodge at Torrey Pines Partnership, 42 Cal. 4th 1158, 1173 (2008) ([holding that] individual defendants are not liable for retaliation under FEHA)."  (Pl.'s Opp'n at 10:12-14.)  To this end, the court hereby GRANTS Defendant's motion for summary judgment on Plaintiff Fifth Claim for relief against Hetland for retaliation in violation of FEHA.

1   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the
2   nonmoving party will bear the burden of proof at trial on a
3   dispositive issue, a summary judgment motion may properly be made
4   in reliance solely on the 'pleadings, depositions, answers to
5   interrogatories, and admissions on file.'"  <u>Id.</u> at 324.  Indeed,
6   summary judgment should be entered against a party who fails to
7   make a showing sufficient to establish the existence of an
8   element essential to that party's case, and on which that party
9   will bear the burden of proof at trial.  <u>Id.</u> at 322.  In such a
10  circumstance, summary judgment should be granted, "so long as
11  whatever is before the district court demonstrates that the
12  standard for entry of summary judgment, as set forth in Rule
13  56(c), is satisfied."  <u>Id.</u> at 323.

14        If the moving party meets its initial responsibility, the
15  burden then shifts to the opposing party to establish that a
16  genuine issue as to any material fact actually does exist.
17  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
18  585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.
19  253, 288-289 (1968).  In attempting to establish the existence of
20  this factual dispute, the opposing party may not rely upon the
21  denials of its pleadings, but is required to tender evidence of
22  specific facts in the form of affidavits, and/or admissible
23  discovery material, in support of its contention that the dispute
24  exists.  Fed. R. Civ. P. 56(e).
25  ///
26  ///
27  ///
28  ///

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Id.</u> at 251-52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank</u>, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>Anderson</u>, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

1   Finally, to demonstrate a genuine issue, the opposing party
2   "must do more than simply show that there is some metaphysical
3   doubt as to the material facts. . . . Where the record taken as a
4   whole could not lead a rational trier of fact to find for the
5   nonmoving party, there is no 'genuine issue for trial.'"
6   Matsushita, 475 U.S. at 586-87, 106 S. Ct. at 1356.

7

8                            **ANALYSIS**

9

10   **A.   Plaintiff's Evidence**

11

12   In opposition to Defendant's motion for summary judgment,
13   plaintiff presents a declaration as rebuttal evidence. (See
14   Monaghan Decl., filed Nov. 17, 2001, [ECF No. 39-2].) Defendant
15   filed evidentiary objections to Plaintiff's Declaration. (See
16   Def.'s Objections, filed Nov. 24, 2011, [ECF No. 40].) As set
17   forth below, Plaintiff's declaration poses numerous evidentiary
18   problems.

19   Many of Plaintiff's statements constitute unfounded,
20   unsupported conclusions. Conclusory statements without factual
21   support are insufficient to defeat a motion for summary judgment.
22   National Steel Corp. v. Golden Eagles Ins. Corp., 121 F.3d 496,
23   502 (9th Cir. 1997). Further,

24       [a] plaintiff's belief that a defendant acted from an
         unlawful motive, without evidence to support that
25       belief, is no more than speculation or unfounded
         accusation about whether the defendant really did act
26       from an unlawful motive. To be cognizable on summary
         judgment, evidence must be competent. . . . It is not
27       enough for a witness to tell all she knows; she must
         know all she tells.

28

                                  9

1  <u>Carmen v. San Francisco Unified School District</u>, 237 F.3d 1026,
2  1028 (9th Cir. 2001).  The type of conclusory allegations
3  employed by Plaintiff in her declaration merely frame the
4  ultimate issues to be determined, but do not create a genuine
5  issue of triable fact to defeat summary judgment.  <u>Radobenko v.</u>
6  <u>Automated Equipment Corp.</u>, 520 F.2d 540, 543 (9th Cir. 1975).

7       Many of Plaintiff's statements also contradict prior sworn
8  testimony given throughout her deposition.  "The general rule in
9  the Ninth Circuit is that a party cannot create an issue of fact
10 by an affidavit contradicting prior deposition testimony."
11 <u>Kennedy v. Allied Mutual Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir.
12 1991).  This rule does not automatically dispose of every case in
13 which a contradictory affidavit is introduced to explain portions
14 of earlier deposition testimony, but is applied to disallow a
15 party to "create" an issue of fact by presenting "sham"
16 testimony.  <u>Id.</u> at 266-67.  "The district court must make a
17 factual determination that the contradiction was actually a
18 'sham.'"  <u>Id.</u> at 267.

19      Defendant's objections to Plaintiff's declaration are, in
20 the majority, sustained.  The court will address each evidentiary
21 issue that is material to plaintiff's claim and defendant's
22 motions in the context of its analysis.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1        **B.    Exhaustion of Administrative Remedies**

2

3        Defendant contends that its motion for summary judgment must

4   be granted because Plaintiff failed to exhaust her administrative

5   remedies with the California Department of Fair Employment and

6   Housing ("DFEH").  Specifically, Defendant contends that,

7   although Plaintiff received a right-to-sue letter, she did not

8   comply with FEHA's exhaustion requirements because: "the DFEH

9   complaint upon which Plaintiff bases her FEHA claims against

10  Hetland was not verified; Hetland's name and address are not set

11  forth in the DFEH complaint before this lawsuit was commenced;

12  and Hetland never had actual or constructive notice of the

13  complaint before this lawsuit was commenced," and thus, was not

14  afforded the opportunity to partake in the administrative

15  process.  (Def.'s Mot., filed Nov. 2, 2011, [ECF No. 33] at 8:6-

16  10.)  Plaintiff counters that she effectively exhausted her

17  administrative remedies by utilizing DFEH's online right-to-sue

18  system, foregoing any administrative investigation, and

19  immediately receiving a right-to-sue letter.

20       Defendant's contentions in this regard have no basis in

21  either fact or law.  First, Plaintiff's counsel attached the

22  "complaint of discrimination under the provisions of [FEHA]" to

23  her declaration which explicitly states William Hetland and

24  contains his work address.[5]

25

26       [5] Defendant contends that merely stating his work address is
    insufficient; Defendant, however, cites to no authority which
27  requires a complainant to list the alleged harasser's  home
    address.  The court therefore finds Defendant's contention
28  unavailing.

11

1  (Olaso Decl., filed Nov. 17, 2011, [ECF No.39-4].)  The same

2  declaration contains the right-to-sue letter issued to Plaintiff

3  by DFEH.  (Id.)  Thus, Defendant's contention the complaint was

4  not verified and that it did not contain his name and address are

5  factually baseless.  Defendant's assertion that constructive

6  notice of, and attempt to participate in, the administrative

7  process of the complaint is similarly misplaced.  DFEH's right-

8  to-sue online instructions specifically state that receiving the

9  right-to-sue notice in this fashion permits the complainant to

10 proceed directly to court, but foregoes the right to an

11 administrative investigation.  (Id. Ex. 3.)  Thus, there is no

12 administrative process in which Defendant could have

13 participated.

14      Finally, Defendant's assertion that Plaintiff's alleged

15 failure to serve the complaint upon Defendant in accordance with

16 California Government Code § 12962 is contrary to California law.

17 See Watsi v. Superior Court, 140 Cal. App. 4th 667, 672-73 (2006)

18 (Holding that when a FEHA complainant elects to obtain from DFEH

19 a right-to-sue letter and pursue a civil complaint in lieu of an

20 administrative investigation, failure to comply with § 12962 does

21 not jurisdictionally bar a FEHA civil claim).  Based on the

22 foregoing, Plaintiff has properly exhausted her administrative

23 remedies and this court has jurisdiction[6] to hear her claims.

24

25      [6] Defendant also contends that, because the operative
   complaint contains no federal claims against Hetland, the court
26 should decline to exercise supplemental jurisdiction over those
   claims.  While Defendant admits that Plaintiff's claims against
27 him arise from a nucleus of facts common with her federal claims
   against the agency, Defendant maintains that the exercise of
28 supplemental jurisdiction would confuse the jury.
                                          (continued...)

1        **C.   Sexual Harassment under FEHA**

2

3        Defendant maintains he is entitled to summary judgment on

4   Plaintiff's claim for sexual harassment under FEHA because the

5   sexual relationship between Plaintiff and Hetland was wholly

6   consensual.  Moreover, Defendant maintains that plaintiff has not

7   submitted sufficient evidence to demonstrate that a reasonable

8   person in her positions would believe she would suffer adverse

9   employment consequences if she did not engage in a sexual

10  relationship with Hetland, or if she did not <u>continue</u> to engage

11  in a sexual relationship with Hetland.  Specifically, Defendant

12  maintains that Plaintiff is precluded from claiming that Hetland

13  made unwelcome sexual advances "after initiating the initial

14  sexual encounters; after repeatedly entertaining Hetland in her

15  home . . .; [and] after reluctantly ending her sexual affair with

16  Hetland . . . only to continue flirting and engaging in sexual

17  banter and jokes with Hetland in the work place."  (Def.'s Mot at

18  12:15-21.)

19  ///

20  ///

21

---

22       [6](...continued)
23  28 U.S.C. § 1367(c) gives the court discretion to decline to
    exercise supplemental jurisdiction when the state-law claim is
24  novel, the state claims predominate over federal claims, the
    court has dismissed all federal claims or there is some other
25  compelling reason to decline jurisdiction.  None of the above
    factors are present in the current case.  Indeed, not only do
26  Plaintiff's FEHA and Title VII claims arise from the same
    transaction or occurrence, but they are also governed by an
27  almost identical legal standard.  <u>See</u> <u>Lyle v. Warner Brothers</u>
    <u>Television Productions</u>, 38 Cal. 4th 264, 279 (2006) (holding that
28  "California courts have adopted the same standard as [Title VII]
    for hostile work environment sexual harassment claims.")

13

1      Plaintiff counters that Hetland's conduct after she

2  terminated the relationship could lead a reasonable jury to

3  conclude that Hetland subjected Plaintiff to unwelcome sexual

4  advances.  Specifically, Plaintiff maintains that, while she did

5  not want to resume their sexual relationship, Hetland's comments

6  concerning his desire to rekindle their affair, and his

7  complaints of depression caused the alleged lack of intimacy with

8  his wife guilted her into resuming their affair.

9      FEHA prohibits harassment based on sex.  Cal. Gov't Code

10  § 12940(j).  Under Title VII, a claim for sexual harassment

11  requires that plaintiff either be subjected to "quid-pro-quo[7]

12  harassment," i.e., that a supervisor conditioned employment

13  benefits on sexual favors, or be subjected to harassment in the

14  form of a hostile work environment.  Craig v. M & O Agencies,

15  Inc., 496 F.3d 1047, 1054 (9th Cir. 2007).  "[A]lthough the

16  wording of the Fair Employment Housing Act and [T]itle VII of the

17  Federal Civil Rights Act of 1964 . . . differs in some

18  particulars, the antidiscriminatory objectives and the overriding

19  public policy purposes are identical," and therefore, California

20  courts refer to applicable federal decisions where appropriate.

21  ///

22  ///

23  _____

24      [7] Plaintiff concedes that "she does not oppose Defendant
    HETLAND's motion for summary judgment on the issue of
25  quid pro quo harassment under FEHA" because "[t]his [c]ourt
    already decided an almost identical claim (quid pro quo under
26  Title VII and FEHA), based on the same facts, when it ruled on
    Defendant WATER AGENCY'S motion for summary judgment.  To this
27  end, Defendant's motion for summary judgment on Plaintiff's
    second claim for relief against Hetland for quid pro quo
28  harassment is GRANTED.

1  <u>Sorosky v. Burroughs Corp.</u>, 826 F.2d 794, 803 (9th Cir. 1987)

2  (citing <u>County of Alameda v. Fair Employment & Hous. Comm'n</u>,

3  153 Cal. App. 3d 499, 504 (1984); <u>Miller v. Dep't of Corr.</u>,

4  36 Cal. 4th 446, 463 (2005); <u>Guz v. Bechtel Nat'l, Inc.</u>,

5  24 Cal. 4th 317, 354 (2000)).

6      To establish a prima facie case for a violation of Title VII

7  and FEHA based on a hostile work environment, plaintiff must

8  demonstrate that the "workplace [was] permeated with

9  discriminatory intimidation . . . that [was] sufficiently severe

10  or pervasive to alter the conditions of [her] employment and

11  create an abusive working environment." <u>Harris v. Forklift Sys.,</u>

12  <u>Inc.</u>, 510 U.S. 17, 21 (1993) (internal quotations and citations

13  omitted); <u>Fisher v. San Pedro Peninsula Hosp.</u>, 214 Cal. App. 3d

14  590, 609 (1989). Sexual harassment includes "unwelcome sexual

15  advances, requests for sexual favors, and other verbal or

16  physical conduct of a sexual nature that has the 'purpose or

17  effect of unreasonably interfering with an individual's work

18  performance or creating an intimidating, hostile, or offensive

19  working environment.'" <u>Miller</u>, 36 Cal. 4th at 463 (<u>quoting</u>

20  29 C.F.R. § 1604.11(a)(3)). Moreover, "the fact that sex-related

21  conduct was 'voluntary,' in the sense that the complainant was

22  not forced to participate against her will, is not a defense to a

23  sexual harassment suit." <u>Meritor Sav. Bank, FSB v. Vinson</u>,

24  477 U.S. 57, 68 (1986). Rather, "[t]he gravamen of any sexual

25  harassment claim is that the alleged sexual advances were

26  'unwelcome.'" <u>Id.</u> (citations omitted).

27  ///

28  ///

The determination of whether conduct was unwelcome "presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact."   Id.

Supervisors with the authority to control the environment may be held personally liable for harassment in violation of FEHA if they tacitly approved of the actions or if they were aware of the harassment and failed to take action to prevent it. Matthews v. Superior Court, 34 Cal. App. 4th 598, 604 (1995).

> Unlike discrimination in hiring, the ultimate responsibility for which rests with the employer, sexual or other harassment perpetrated by a supervisor with the power to hire, fire and control the victimized employee's working conditions is a particularly personal form of the type of discrimination which the Legislature sought to proscribe when it enacted the FEHA. Our holding that the responsibility for such acts must be borne both by the offender as well as the employer who tolerates the offense is consistent with the Legislature's intent to provide effective remedies which will eliminate such discriminatory practices.

Id. at 605-06 (internal quotations omitted).   Accordingly, where the harassment is committed by a supervisor, the employer is strictly liable.   State Dep't of Health Servs. v. Superior Court, 31 Cal. 4th 1026, 1041 (2003

As the court previously explained in its memorandum on the Agency's motion for summary judgment, there is a material issue of fact that the court cannot decide as a matter of law as to whether Hetland subjected Plaintiff to unwanted sexual advances after she ended the first affair.   Contrary to Defendant's contentions, the mere fact that the relationship was initially consensual is no defense to Plaintiff's claim for hostile work environment sexual harassment:

///

The Supreme Court has specifically held that the mere fact that sex-related conduct was 'voluntary,' in the sense that the complainant was not forced to participate against her will, is not a defense to a sexual harassment suit." <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 68 (1986).  Thus, the court finds [D]efendant's voluntariness argument in the context of plaintiff's hostile work environment claim unpersuasive, and does not grant summary judgment on that basis.

(Mem. & Order at 18:28-19:7.)

Moreover, and more importantly, Plaintiff has proffered sufficient evidence that, after Plaintiff ended the relationship, Hetland continued to implore her to resume the sexual relationship; this evidence could permit a reasonable jury to find that Plaintiff was the victim of Hetland's unwanted sexual advances.  Specifically:

Hetland continually told [P]laintiff that he did not get any intimacy at home; he told her that he missed their relationship;[8] when Hetland was diagnosed with cancer, he elected to not have surgery so that he could continue to have sex with her.  (Monaghan Dep. at 194-195.)  According to [P]laintiff, this conduct made her feel guilty and resulted in her re-engaging in the affair with Hetland out "of an obligation to him because he was unhappy."  (<u>Id.</u>)

Whether this conduct amounts to a sexual advance and, more importantly, whether this conduct was unwelcome, constitutes a triable issue of fact that cannot be determined by this court as a matter of law.  In this case, whether this conduct was unwelcome "presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact."  <u>Meritor</u>, 477 U.S. at 68.

(Mem. & Order at 19:16-20:6.)

---

[8] Based on plaintiff's deposition testimony, it is inherently unclear whether Hetland's advances were unilateral or whether the rekindling of the relationship was completely mutual. Thus, there is a triable issue of fact as to whether Hetland's conduct constituted unwelcome sexual advances under the Hostile Work Environment rubric.

17

1   To this end, in this case, the court cannot as a matter law,

2   viewing the evidence in a light most favorable to the plaintiff,

3   conclude that Hetland did not subject Plaintiff to <u>unwelcome</u>

4   sexual advances in contravention of FEHA.

5       Based on the foregoing, the court hereby DENIES Hetland's

6   motion for summary judgment on Plaintiff's hostile environment

7   claim under FEHA.

8

9       **D.   Negligence**

10

11      Defendant moves for summary judgment on Plaintiff's common

12  law negligence claim, arguing that Plaintiff cannot maintain a

13  claim for negligence because the complaint alleges only

14  intentional acts.  Moreover, Defendant maintains that the court

15  should summarily dispose of Plaintiff's negligence claim because

16  Plaintiff has not proffered any evidence that Hetland owed her

17  any duty of care.  Plaintiff contends that the law relied on by

18  Defendant does not foreclose upon the possibility that

19  intentional conduct can lead to liability for negligence and that

20  a reasonably jury could decide that, because of the "closeness of

21  the connection between [D]efendant's conduct and the injury

22  suffered," the court can easily conclude that Hetland owed

23  Plaintiff a reasonable duty of care.  (Pl.'s Opp'n at 12:1-3.)

24      The court cannot surmise how the allegations of Plaintiff's

25  complaint can support a claim for negligence.  First, Plaintiff

26  fails to specify exactly <u>what</u> conduct constituted negligence.

27  ///

28  ///

18

1  Moreover, Plaintiff's proffered evidence only describes
2  intentional acts by Defendant.  Cf Semore v. Poole
3  217 Cal. App. 3d 1087, 1105 (1990) (holding that defendant
4  employer's conduct in discharging defendant could not constitute
5  negligent infliction of emotional distress[9] because any action
6  "by the employer were intentional, not negligent"); accord
7  Edwards v. United States Fid. & Guar. Co., 848 F. Supp. 1460,
8  1466 (holding that where "[a]n employer's supervisory conduct is
9  inherently 'intentional'" and where "the conduct alleged is
10 intentional, it cannot be used as a basis for a negligent
11 infliction of emotional distress claim.")

12     Even if the intentional nature of Hetland's conduct does not
13 preclude Plaintiff's negligence claim, the court cannot deduce
14 how Hetland's engaging in a consensual sexual relationship with
15 Plaintiff gave rise to any duty of care.

16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25

26     [9] See Nancy Hersh & Ward Smith, California Civil Practice
   Torts § 1:49 (2011) ("A Cause of action for the negligent
27 infliction of emotional distress is not an independent tort but
   the tort of negligence, and all the traditional elements of duty,
28 breach of duty, causation, and damages apply.")

1  In determining whether Hetland owed Monaghan a duty to reduce the

2  risk of her alleged injury — the loss of her job — the court

3  looks to foreseeability of harm to the injured party, the degree

4  of certainty that the injured party suffered injury, the

5  closeness of the connection between the defendant's conduct and

6  the injury suffered, the moral blame attached to the defendant,

7  the policy of preventing future harm, the extent of the burden to

8  the defendant and the consequences to the community of imposing a

9  duty on the defendant to exercise care with its resulting

10  liability for breach, and the availability, cost, and custom of

11  obtaining insurance for the risk involved.  Rowland v. Christian

12  69 Cal. 2d 108 (1968).  In this case, it simply was not

13  foreseeable that, by engaging in a consensual relationship with

14  Monaghan, she would abuse alcohol at the workplace to such an

15  extent that it would lead to her firing.  This same reasoning

16  goes to distance the connection between Defendant's conduct and

17  the alleged injury suffered.[10]

18      Based on the foregoing, the court finds that, as a matter of

19  law, Plaintiff has not proffered sufficient evidence to support

20  the necessary elements of her claim for negligence.  Thus,

21  Defendant's motion for summary judgment on Plaintiff's negligence

22  claim is hereby GRANTED.

23

24      [10] Of note in this regard, in granting the Agency's motion
    to dismiss Plaintiff's claim for retaliation, pointed out that
25  "this is not a case in which an employee is arbitrarily
    terminated without any rational justification.  Indeed, plaintiff
26  admits that she engaged in serious work-place misconduct.
    Specifically, plaintiff continually abused alcohol during work
27  hours."  (Mem. & order at 25:14-18.)  This same reasoning
    supports the court's conclusion that Hetland did not owe
28  Plaintiff a duty.

1

**CONCLUSION**

2

3        For the foregoing reasons, Defendant's motion for summary
4   judgment is GRANTED in part and DENIED in part. Specifically:
5        1.   Defendant's motion for summary judgment on Plaintiff's
6   claim for quid pro quo sexual harassment in violation of FEHA is
7   GRANTED.
8        2.   Defendant's motion for summary judgment on Plaintiff's
9   claim for hostile work environment sexual harassment in violation
10  of FEHA is DENIED.
11       3.   Defendant's motion for summary judgment on Plaintiff's
12  claim for retaliation in violation of FEHA GRANTED.
13       4.   Defendant's motion for summary judgment on Plaintiff's
14  claim for negligence is GRANTED.
15       IT IS SO ORDERED.
16
Dated: February 6, 2012
17
18                                    _____
19                                    MORRISON C. ENGLAND, JR.
                                      UNITED STATES DISTRICT JUDGE
20
21
22
23
24
25
26
27
28

21